■ In the Matter of CITY OF RENSSELAER et al., Respondents-Petitioners, v PETER S. DUNCAN, as Deputy Commissioner for Natural Resources, New York Department of Environmental Conservation, Respondent, and 4C's DEVELOPMENT CORPORATION, Appellant-Respondent. [698 NYS2d 113] —Peters, J. (1) Appeal from an order of the Supreme Court (Lamont, J.), entered July 10, 1998 in Albany County, which, in a proceeding pursuant to CPLR article 78, denied a motion by respondent 4C's Development Corporation to dismiss the petition against it as time barred, and (2) proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Deputy Commissioner for Natural Resources which granted 4C's Development Corporation's application for a permit to construct and operate a construction and demolition debris landfill.

In November 1993, respondent 4C's Development Corpora-

tion applied to the Department of Environmental Conservation (hereinafter DEC) for permits to resume the construction and operation of a 12.4-acre landfill in the Town of East Greenbush, Rensselaer County,[1] for construction and demolition debris. A legislative hearing was convened on January 16, 1996 to receive comments on the proposed project and the draft environmental impact statement. On January 17, 1996, the Administrative Law Judge (hereinafter ALJ) commenced an issues conference (*see*, 6 NYCRR 624.4 [b]) to, *inter alia*, consider applications for party status, narrow or resolve disputed issues of fact and determine whether such disputed issues should be adjudicated in a hearing. Two of the four issues identified for the adjudicatory hearing were settled by the parties—the potential impact from dust and storm water management. Left for determination were the potential adverse impacts from hydrogen sulfide and, should such environmental impacts not be adequately mitigated or avoided, whether a public need for such landfill existed. After receiving testimony from numerous expert witnesses pertaining to these remaining issues, the ALJ rendered a 35-page hearing report which recommended that the draft permit be granted.

The Deputy Commissioner for Natural Resources for DEC adopted the findings of the ALJ, effective February 1, 1998, and directed that a permit be issued. He found that the landfill would not generate significant amounts of hydrogen sulfide and that no further discussion of the social and economic benefits would be needed as the environmental impacts associated therewith had been mitigated or settled.

This CPLR article 78 proceeding was commenced on May 28, 1998 seeking the annulment of the Deputy Commissioner's determination. Petitioners served the pleadings upon the Secretary of State which 4C's received on June 3, 1998. 4C's rejected the pleadings based upon CPLR 3022, contending that the attorney verification was improper and violative of CPLR 3021. Notwithstanding petitioners' attempt to serve an amended pleading the following day, 4C's rejected the service as untimely, forming the basis for its later motion to dismiss the petition.

Supreme Court denied 4C's' motion by finding, *inter alia*, that an incomplete or defective verification does not constitute a jurisdictional defect requiring a dismissal of the proceeding. 4C's appeals that determination and, upon the transfer of the underlying proceeding pursuant to CPLR 7804 (g), we commence our review.

---

1. DEC had permitted 4C's to operate a landfill in 1988, yet the permit expired when a timely renewal application was not filed.

Preliminarily, we note no error in the denial of 4C's' motion to dismiss the petition as time barred.[2] CPLR 304 details that "[a] special proceeding is commenced by filing a notice of petition or order to show cause and a petition". For those purposes, it defines "filing" to mean the delivery of the aforementioned papers to the court together with any required fees (*id.*). This act of filing "marks [the] 'interposition' of the claim for Statute of Limitations purposes" (*Matter of Gershel v Porr*, 89 NY2d 327, 330; *see*, CPLR 203 [c] [1]). Hence, as strict compliance with the filing system is required (*see*, *Matter of Fry v Village of Tarrytown*, 89 NY2d 714, 720), and since service was effected with filed papers on respondent with proof thereof filed within the statutory period (*see*, CPLR 304), we must conclude, under the commencement-by-filing system, that petitioners' claims were timely interposed (*see*, CPLR 217 [1]). Although CPLR 7804 (d) requires that the petition be verified, such requirement is not mandated for the commencement of a special proceeding (*see*, CPLR 304). Further finding that a deficient verification will not constitute a jurisdictional defect rendering the pleading a nullity and that such deficiency may be disregarded where, as here, there exists no showing of prejudice (*see*, *Matter of Barron v Town of Esopus*, 246 AD2d 707), we next address the evidence supporting the permit granted.

We are constrained to give deference and not substitute our judgment for that of the agency if such " 'judgment * * * involves factual evaluations in the area of the agency's expertise and [its determination] is supported by the record' " (*Matter of Regional Action Group v Zagata*, 245 AD2d 798, 800, *lv denied* 91 NY2d 811, quoting *Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, 363). Upon our review, we find the determination wholly supported.

The Deputy Commissioner's determination that the proposed landfill, as controlled by the draft DEC permit, is designed not to produce significant amounts of hydrogen sulfide is supported by a rational basis. Not only does the permit prohibit the disposal of pulverized construction and demolition debris which undisputably contributes to hydrogen sulfide production, the proposed landfill is also designed with a leachate collection system which collects and removes excess moisture in addition to preventing groundwater from seeping into the waste mass. Notably, petitioners' expert agreed that an operating leachate

---

2. The order denying 4C's' motion is not appealable as of right (*see*, CPLR 5701 [b] [1]) and, therefore, the appeal therefrom will be dismissed. Our scope of review upon transfer of the underlying proceeding includes review of the denial of 4C's' motion (*see*, *Matter of Healy v Sheldon*, 235 AD2d 992).

collection system would limit the potential for hydrogen sulfide production.

Moreover, the record reflects that the design of this facility was amended to facilitate the conversion of its passive vent system into an active gas collection system if conditions made it necessary. With the further incorporation of a prohibition on construction of a new cell until the previously constructed cell is properly closed and capped, we find no basis upon which to conclude that the determination is arbitrary or capricious, represents an abuse of discretion or is predicated upon an error of law (*see, Matter of Town of Dryden v Tompkins County Bd. of Representatives*, 78 NY2d 331, 333; *Matter of Pell v Board of Educ.*, 34 NY2d 222, 231; *Matter of Regional Action Group v Zagata, supra*; *Matter of Town of Charleston v Montgomery, Otsego, Schoharie Solid Waste Mgt. Auth.*, 235 AD2d 608, *lv denied* 89 NY2d 812). To the extent that conflicting expert opinions with respect to this issue were propounded, the Deputy Commissioner had the discretion to choose the experts presented by 4C's over those of petitioners (*see, Saratoga Water Servs. v Zagata*, 247 AD2d 788).

Addressing the failure to have required 4C's to conduct a cumulative noise impact analysis for the proposed landfill, both the ALJ and the Deputy Commissioner permitted a deviation (*compare, Knight v Amelkin*, 68 NY2d 975, 977; *Matter of Callanan Indus. v Rourke*, 187 AD2d 781) since a cumulative noise impact analysis had already been conducted for the neighboring mining operation which took into account 4C's prior operations. Such document was specifically described, its findings summarized and was properly incorporated by reference into the draft environmental impact statement (*see,* 6 NYCRR 617.9 [b] [7]). Moreover, we note the inclusion of 4C's noise study in the draft environmental impact statement, which study took into account the ambient noise level associated with truck traffic, including traffic traveling to and from the mine. With the parties' further voluntary agreement to place a limit on truck traffic, and with petitioners failing to make an offer of proof with respect to additional impacts of noise from truck traffic, we find the Deputy Commissioner to have taken the requisite "hard look" at such issue (*see, Matter of Callanan Indus. v Rourke, supra*, at 782), making a "reasoned elaboration of the basis for [his] determination" (*id.*, at 782).

We further find that the Deputy Commissioner's interpretation of 6 NYCRR 360-1.9 (g) (1) is entitled to deference since there is no dispute that there is more than 150 feet of distance between the boundary of the landfill and the border of the for-

mer City of Rensselaer landfill (*see, Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, *supra; Matter of Town of Northumberland v Sterman*, 246 AD2d 729, 732, *lv denied* 92 NY2d 801). As "neither irrational nor contrary to the plain language of the regulation" (*id.*, at 732), we decline continued review.

Nor will we review the issue concerning whether the proposed landfill is in accordance with the State's solid waste management policy (*see*, ECL 27-0106) since, despite an extensive issues conference, petitioners failed to raise that issue until the conclusion of the adjudicatory proceeding (*see*, 6 NYCRR 624.8 [a] [4]). As to additional contentions concerning alleged inadequacies in the application of 4C's, we find them without merit.

Mercure, J. P., Crew III, Spain and Graffeo, JJ., concur. Adjudged that the appeal is dismissed, without costs. Adjudged that the determination is confirmed, without costs, and petition dismissed.